**Opinion issued April 16, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00343-CR

_____

**KAI JEWEN STRINGER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1580575**

---

## O P I N I O N

Kai Jewen Stringer pleaded guilty to the offense of unlawful possession of a firearm by a felon after the trial court denied his motion to suppress the evidence. He appeals contending that the trial erred in denying his motion. We affirm.

## BACKGROUND

A grand jury indicted Stringer for the offense of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE § 46.04(a).

Stringer moved to suppress the physical evidence against him and any corresponding testimony from law enforcement officers or their agents about the physical evidence. He argued that the physical evidence was obtained in violation of his constitutional right against unreasonable search and seizure.

The trial court held a hearing on the motion. Two witnesses testified at the hearing. The first witness was the peace officer who arrested Stringer, J. Pelayo.

Pelayo is an officer with the Houston Police Department. On the night in question, Pelayo was off duty and providing security at an apartment complex in Houston that has problems with gangs, narcotics, and violent crime.

Pelayo was in his own vehicle when he first saw Stringer park his car between two storage containers in the complex's parking lot, which Pelayo thought was suspicious because he did not recognize Stringer or his passenger, Jonathan Hurd, as being residents and no other cars were parked in this particular location. Pelayo got out of his vehicle and walked toward the parked car to make contact with Stringer and Hurd. As Pelayo did so, Hurd began to get out of the car. Pelayo, who was about 30 or 40 feet away, then smelled the distinct odor of marijuana coming from the car.

As Pelayo continued to walk toward the car, the smell of marijuana became stronger. Hurd turned and faced Pelayo. Pelayo saw that Hurd had "a marijuana blunt" behind his left ear. In the meantime, Stringer reached into the car's backseat to grab a bag, placed the bag in the driver's seat, and got out of the car. Pelayo began questioning Hurd, asking him if he lived at the complex and had identification.

Pelayo decided that Hurd's possession of marijuana warranted arrest and Pelayo handcuffed him. Pelayo then walked around the car toward Stringer and began questioning him. Pelayo asked Stringer if he had a firearm on his person. Stringer said that he did. Pelayo patted Stringer down and felt the butt of a firearm in Stringer's waistband. Pelayo handcuffed Stringer and then removed the firearm, which was a small loaded revolver.

Pelayo found a small bag of marijuana on Hurd. Pelayo asked Stringer if there was anything else in the car, but Stringer hesitated to answer. Pelayo later found a larger bag of marijuana in a shoebox within the bag that Stringer had moved. The bag contained more than 500 grams of marijuana, a felony amount. Pelayo also found a second firearm inside the shoebox.

There also was burnt marijuana residue in the car. Pelayo testified that he "could tell they'd been smoking" marijuana in the car due to the smell of "burnt marijuana." Hurd admitted to another officer who later arrived at the scene that he had smoked marijuana in the car.

On cross-examination, Pelayo denied that he had parked his own vehicle so as to block Stringer's car from leaving. Pelayo testified that he decided to search the car and its occupants after he smelled the odor of marijuana. Pelayo agreed that he intended to detain Stringer and Hurd the moment that he smelled the marijuana and that he would have pursued them had they fled. He further agreed that he did not Mirandize Stringer before questioning him even though Stringer was not free to leave at that time.

Pelayo admitted that he has been disciplined by the Department more than once for improper police procedure.

Hurd also testified. Hurd stated that he and Stringer parked between the two storage containers because there was an empty parking space there. They were there to pick up Stringer's girlfriend who lived at the complex. Hurd said that both he and Stringer got out of the car and were walking to her apartment when Pelayo stopped them. According to Hurd, Pelayo "swerved in front of the car" and "blocked the car off" with his truck. Pelayo asked what they were doing at the complex, and Stringer told Pelayo that they were going to his girlfriend's apartment. Pelayo then searched Hurd, Stringer, and the car. Hurd said that the bag of marijuana found in the car belonged to him and that he had been sentenced to two years' confinement for possessing it. He denied smoking marijuana in the car.

The trial court denied Stringer's motion to suppress the evidence. In doing so, the court found that:

- Stringer's choice of parking location was not suspicious given that many cars were parked in the general vicinity;

- Pelayo's testimony that he smelled marijuana when he was a reasonable distance from Stringer's car was credible; and

- the odor of marijuana provided Pelayo reason to approach Stringer's car and to detain and arrest Stringer and Hurd.

Stringer then pleaded guilty. In accord with the terms of a plea bargain, the trial court assessed his punishment at five years' confinement. The trial court certified that Stringer had the right to appeal.

## DISCUSSION

Stringer contends that the trial court erred in denying his motion to suppress because he was subjected to an unconstitutional search and seizure in violation of his rights under the Fourth Amendment to the United States Constitution.

### *Standard of Review*

We review a trial court's suppression ruling under a bifurcated standard of review. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019). We defer to the trial court's fact findings, especially those that turn on assessments of witness demeanor and credibility; we review these findings solely for an abuse of discretion and view the record in the light most favorable to the trial court's ruling. *Id.*; *Ruiz v. State*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *State v. Martinez*, 570 S.W.3d

5

278, 281 (Tex. Crim. App. 2019). We review the trial court's application of the law to the facts de novo. *Ruiz*, 581 S.W.3d at 785; *Ruiz*, 577 S.W.3d at 545. So, for example, we review de novo whether the facts give rise to reasonable suspicion or probable cause. *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017). In sum, we must uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *Ruiz*, 577 S.W.3d at 545.

### *Applicable Law*

Not all encounters between peace officers and citizens require reasonable suspicion to detain or probable cause to arrest. There are three types of interactions: consensual encounters, investigative detentions, and arrests. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Jordan v. State*, 394 S.W.3d 58, 61 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

The first category—consensual encounters—does not implicate the Fourth Amendment. *Furr*, 499 S.W.3d at 877; *Jordan*, 394 S.W.3d at 61. A peace officer is free to stop and request information from a citizen with no justification whatsoever. *Jordan*, 394 S.W.3d at 61. By the same token, the citizen is free to terminate such an encounter at will and walk away. *Id.*

If, however, the officer either through force or an assertion of authority restrains the citizen's liberty, then the encounter is not consensual and either has become a detention or an arrest. *Furr*, 499 S.W.3d at 877–78; *Jordan*, 394 S.W.3d

at 62. An investigative detention is a seizure of limited scope and duration that requires reasonable suspicion of criminal activity. *Furr*, 499 S.W.3d at 877; *Jordan*, 394 S.W.3d at 62. A warrantless arrest, the most intrusive type of seizure, must be supported by probable cause. *Furr*, 499 S.W.3d at 877; *Jordan*, 394 S.W.3d at 62.

A strong odor of marijuana from a small enclosed area, like a car, gives a peace officer probable cause to make a warrantless search of both the car and its occupants. *Rocha v. State*, 464 S.W.3d 410, 418 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd); *Jordan*, 394 S.W.3d at 64–65. As marijuana possession is a crime, its odor evidences criminal activity. *Jordan*, 394 S.W.3d at 64; *see also Jackson v. State*, 745 S.W.2d 394, 396 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (odor of burning marijuana from car gave officer probable cause to believe offense was being committed in his presence). Thus, the strong odor of marijuana may give a peace officer probable cause to make an arrest. *Rocha*, 464 S.W.3d at 418; *Joseph v. State*, 3 S.W.3d 627, 634 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

### *Analysis*

Stringer contends that Pelayo detained him from the outset by boxing his car into its parking space so that he could not leave and then handcuffing him and Hurd without reasonable suspicion that they were engaged in criminal activity. But this contention depends on Hurd's version of events, which the trial court rejected. Sitting as factfinder, it was the trial court's prerogative to credit Pelayo's testimony

over Hurd's and we must defer to the trial court's fact findings, especially given that its decision as to which witness to believe turned on credibility assessments. *See Ruiz*, 581 S.W.3d at 785; *Ruiz*, 577 S.W.3d at 545; *Martinez*, 570 S.W.3d at 281.

Viewing the record in the light most favorable to the trial court's ruling, Pelayo approached Stringer's car on foot to talk to Stringer and Hurd. Pelayo was free to stop them in the parking lot and ask what they were doing at the complex. *Jordan*, 394 S.W.3d at 61. He did not require reasonable suspicion or probable cause to do so. *See Furr*, 499 S.W.3d at 877; *Jordan*, 394 S.W.3d at 61. As Pelayo approached, he smelled a strong odor of marijuana coming from the car. This odor gave Pelayo probable cause to search the car as well as its occupants, Stringer and Hurd. *See Rocha*, 464 S.W.3d at 418; *Jordan*, 394 S.W.3d at 64–65. When Pelayo searched Stringer, Pelayo found that Stringer had a revolver in his waistband.

In sum, the trial court's ruling is supported by the evidence, and it correctly applied the law to its findings of fact. We therefore hold that the trial court did not err in denying Stringer's motion to suppress. *See Ruiz*, 577 S.W.3d at 545.

Stringer nonetheless argues that the trial court erred in denying his suppression motion because Pelayo asked him whether he was carrying a firearm after his arrest but without first Mirandizing him. *See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). This argument lacks merit. Assuming for the sake of argument that Pelayo was required to read Stringer his rights before asking him whether he

8

was carrying a firearm, the failure to do so would require exclusion of Stringer's answer, not the firearm itself. *See In re H.V.*, 252 S.W.3d 319, 329 (Tex. 2008) (holding that *Miranda* violations "do not justify exclusion of physical evidence resulting therefrom" and that courts below erred in excluding gun); *Baker v. State*, 956 S.W.2d 19, 22–24 (Tex. Crim. App. 1997) (*Miranda* violation did not require trial court to exclude evidence obtained during search of apartment).

But Stringer did not seek to suppress his admission that he was armed. Stringer's motion to suppress concerned "physical evidence" and testimony by law enforcement officers and their agents about the physical evidence, not his own statements. During the suppression hearing, Stringer broadened his complaint to include any statements that he made "while he was detained in the vehicle." The state stipulated that it did not intend to introduce any of these statements into evidence. Stringer admitted that he was armed immediately before Pelayo searched him, which occurred before Stringer was detained in a peace officer's vehicle.

As Stringer did not seek to suppress his admission that he was carrying a firearm in the trial court, he has not preserved this issue for our review. *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 33.1(a); *see also Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (trial objection must be same as error asserted on appeal to preserve error for appellate review).

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.

Publish. Tex. R. App. P. 47.2(b).